No. 13-16248

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

ARIZONA DREAM ACT COALITION; JESUS CASTRO-MARTINEZ;
CHRISTIAN JACOBO; ALEJANDRA LOPEZ; ARIEL MARTINEZ; AND
NATALIA PEREZ-GALLEGOS,

Plaintiffs-Appellants,

v.

JANICE K. BREWER, Governor of the State of Arizona, in her official capacity;
JOHN S. HALIKOWSKI, Director of the Arizona Department of Transportation,
in his official capacity; and STACEY K. STANTON, Assistant Director of the
Motor Vehicle Division of the Arizona Department of Transportation, in her
official capacity,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the District of Arizona,
No. 2:12-cv-02546-DGC

_____

## SUPPLEMENTAL BRIEF OF APPELLEES
## GOVERNOR JANICE K. BREWER, JOHN S. HALIKOWSKI
## AND STACEY K. STANTON

_____

Douglas C. Northup
Timothy Berg
Sean T. Hood
FENNEMORE CRAIG, P.C.
2394 E. Camelback Road, Suite 600
Phoenix, Arizona 85016-3429
Telephone: (602) 916-5000
Email:  dnorthup@fclaw.com
Email:  tberg@fclaw.com
Email:  shood@fclaw.com
Attorneys for Defendants-Appellees
Governor Janice K. Brewer,
John S. Halikowski and Stacey K. Stanton

Joseph Sciarrotta, Jr.
Office of Governor Janice K. Brewer
1700 West Washington St., 9th Floor
Phoenix, Arizona  85012-2913
Telephone:  (602) 542-1586
Email:  jsciarrotta@az.gov

Co-Counsel for Defendant-Appellee
Governor Janice K. Brewer

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ....................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ............................................................................... 1

STATEMENT OF FACTS ................................................................... 1

    I.     ADOT's 2012 and 2013 Policy Changes ............................... 1

    II.    The Rational Bases for the 2012 and 2013 Policy Changes ................ 2

    III.   ADOT's 2013 Revision to Remedy Inconsistencies ........................... 3

ARGUMENT ..................................................................................... 4

I.     THE COURT SHOULD REMAND TO THE DISTRICT COURT. ............ 4

    A.    The District Court Must First Consider the 2013 Policy. .................... 4

    B.    Remand Is Necessary Because the Record is Devoid Of the Facts Necessary to Render An Analysis of the Equal Protection Claim. ........................................................ 5

II.    DEFENDANTS PREVAIL IF THIS COURT UNDERTAKES AN EQUAL PROTECTION ANALYSIS OF THE 2013 POLICY. ................... 7

    A.    The 2013 Policy Cures Any Potential Equal Protection Issue............. 7

    B.    Plaintiffs Cannot Satisfy The Similarly Situated Test. ........................ 8

    C.    ADOT's 2013 Policy Satisfies the Rational Basis Test..................... 11

        1.    Rational Basis Review Applies ................................. 11

        2.    ADOT's 2012 Policy Was Rationally Related to Legitimate State Interests ......................................... 13

        3.    ADOT's 2013 Policy Is Rationally Related to Legitimate State Interests .......................................... 14

     D.    Plaintiffs Have Not Demonstrated Irreparable Harm. ........................16

III.   PLAINTIFFS' PREEMPTION CLAIM FAILS. ..........................................17

IV.   PLAINTIFFS' REQUEST FOR AN INJUNCTION PENDING
APPEAL SHOULD BE DENIED. ................................................................20

CONCLUSION ........................................................................................................20

CERTIFICATE OF COMPLIANCE ......................................................................22

CERTIFICATE OF SERVICE ...............................................................................23

# TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Arizona v. United States*, 132 S. Ct. 2492 (2012) ................................................17

*Brodsky v. State*, 189 P.3d 1081 (Ariz. App. 2008) ...........................................17

*Chan v. Reno*, 113 F.3d 1068 (9th Cir. 1997) ......................................................10

*Christian Gospel Church, Inc. v. City & Cnty. of S.F.*, 896 F.2d
    1221 (9th Cir. 1990), *superseded on other grounds by* 42 U.S.C.
    § 2000e ..............................................................................................................5, 7

*Coral Constr. Co. v. King Cnty.*, 941 F.2d 910
    (9th Cir. 1991) ..................................................................................................4, 5

*Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983
    (9th Cir. 2009) .......................................................................................................5

*Fusari v. Steinberg*, 419 U.S. 379 (1975) .........................................................4, 5

*Harris v. Singh*, No. 12-476, 2012 WL 5467856 (W.D. Pa. Oct. 23,
    2012) ....................................................................................................................20

*Heckler v. Matthews*, 465 U.S. 728 (1984) ...........................................................7

*Heller v. Doe*, 509 U.S. 312 (1993) ......................................................................13

*In Re Quintero*, 18 I&N Dec. 348 (BIA 1982) ....................................................17

*Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d
    186 (3d Cir. 2001) .................................................................................................4

*Lupert v. Cal. State Bar*, 761 F.2d 1325 (9th Cir. 1985) ..............................19, 20

*McGhee v. McCall*, No. 1:10-cv-333, 2010 WL 2163818 (W.D. Mich.
    Apr. 19, 2010) .....................................................................................................20

*Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142
    (9th Cir. 2013) ....................................................................................................7, 8

*Palmer v. Thompson*, 403 U.S. 217 (1971) ...........................................................7

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ................................................20

*Raper v. Lucey*, 488 F.2d 748 (1st Cir. 1973) ......................................20

*Reed v. Town of Gilbert*, 707 F.3d 1057 (9th Cir. 2013) ...................4, 5

*Rhodes v. Stewart*, 705 F.2d 159 (6th Cir. 1983) ................................19

*Saldana v. Lahm*, No. 4:13CV3108, 2013 WL 5658233 (D. Neb. Oct. 11, 2013) ..........................................................................18

*Univ. of Tex. v. Camenish*, 451 U.S. 390 (1981) .................................6

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464 (1st Cir. 2009)...............16

*Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 1023 (E.D. Cal. 2007) ................................................................................12

*Wyeth v. Levine*, 555 U.S. 555 (2009) ................................................18

## FEDERAL STATUTES

8 U.S.C. § 1182(a)(9)(B) ......................................................................9

8 U.S.C. § 1182(a)(9)(B)(iii)(I) ..........................................................9

INA § 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A)) ...............................15

Pub. L. No. 109-13, § 201, 119 Stat. 231 ...........................................18

## STATE STATUTES

A.R.S. § 28-336.....................................................................................18

A.R.S. § 28-3151...................................................................................17

A.R.S. § 28-3153(D) .................................................................1, 8, 14

A.R.S. § 28-3471...................................................................................17

## FEDERAL REGULATIONS

6 C.F.R. § 37.1 .....................................................................................18

iv

6 C.F.R. § 37.3 ..................................................................................18

8 C.F.R. § 274.a.12(c)(9) ...........................................................11, 15

8 C.F.R. § 274.a.12(c)(10) ...............................................................11

8 C.F.R. § 274.a.12(c)(11) ...............................................................15

8 C.F.R. § 274.a.12(c)(14) ...............................................................15

8 C.F.R. § 274.a.12(c)(31) ...............................................................15

## OTHER

Fed. R. App. P. 8(a)(1)......................................................................20

Fed. R. App. P. 8(a)(2)......................................................................20

U.S. Immigration and Customs Enforcement, Tool Kit for Prosecutors
     (Apr. 2011), *available at*
     https://www.ice.gov/doclib/about/offices/osltc/pdf/tool-kit-for-
     prosecutors.pdf ......................................................................9, 19

USCIS Policy Memorandum Regarding Parole of Family Members of
     Active Duty Members of the Armed Forces (Nov. 15, 2013),
     *available at*
     http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/
     2013/2013-1115_Parole_in_Place_Memo_.pdf ..............................15

*Questions & Answers: Victims of Criminal Activity, U Nonimmigrant
     Status*, USCIS.GOV, http://www.uscis.gov/humanitarian/victims-
     human-trafficking-other-crimes/victims-criminal-activity-u-
     nonimmigrant-status/questions-answers-victims-criminal-activity-
     u-nonimmigrant-status (last visited Jan 6. 2014) ...........................16

USCIS Policy Memorandum Regarding VAWA Self-Petitioners (Aug. 30, 2011),
     *available at*
     http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2011/August/
     VAWA-Elder-Abuse.pdf. ……………………………………….. 15, 16

*This brief uses the same abbreviations found in the Answering Brief.

**INTRODUCTION**

Appellants ask this Court to sit as a trier of fact, determining factual issues based on materials that are not in the appellate record. This is another reason why the district court's ruling should not be disturbed, and this matter should be remanded to the district court for further proceedings on the merits. The parties have undertaken substantial discovery regarding the revised policy during the pendency of this appeal, and the district court must make an initial determination as to the revised policy's constitutionality. If this Court considers the revised policy on the merits, Defendants prevail because the revision cures any Equal Protection issue and the district court's Supremacy Clause analysis applies to the revised policy.

**STATEMENT OF FACTS**

**I.     ADOT's 2012 and 2013 Policy Changes**

To receive an identification card or driver's license (collectively, a "driver's license"), Arizona law requires that an applicant submit "proof satisfactory" to ADOT "that the applicant's presence in the United States is authorized under federal law." A.R.S. § 28-3153(D). When Secretary Napolitano announced the DACA Program—the executive branch's exercise of prosecutorial discretion not to deport certain individuals by not enforcing federal law—ADOT became aware for the first time that certain persons *without* authorized presence under federal law

1

were eligible for EADs. *See* SER 770-71. DACA recipients were eligible for a new category of EAD, (c)(33). *See* SER 773. Because the DACA Program resulted in access to EADs by persons without authorized presence under federal law, ADOT revised Policy 16.1.4 (the "Policy") in September 2012. *Id.*; ER 189-92. Under the 2012 Policy, ADOT did not accept EADs with code (c)(33) as primary identification for obtaining a license. *See* SER 773; ER 191.

In September 2013, ADOT further revised the Policy. Dkt. 45-2. Under the 2013 Policy, ADOT does not accept EADs with codes (a)(11), (c)(14) and (c)(33) because recipients of regular deferred action ((c)(14)) and deferred enforced departure ((a)(11)) do not have authorized presence under federal law.

## II.    The Rational Bases for the 2012 and 2013 Policy Changes

After DACA was announced in June 2012, ADOT's Director and his advisors began reviewing the program's potential impact on ADOT's administration of Arizona's driver's license laws. As a result of ADOT's analysis, the Director developed several concerns that prompted the 2012 Policy change: (1) avoiding the risk of potential liability to ADOT for issuing driver's licenses to 80,000 unauthorized immigrants;[1] (2) reducing the risk that licenses could provide improper access to public benefits; (3) unduly burdening ADOT with processing an extremely large number of license applications from groups that are not

---

[1] The Director knew that ADOT was previously sued for the alleged improper issuance of driver's licenses. SER 771.

lawfully authorized to be in the United States, or having to cancel those licenses if DACA is revoked; and (4) avoiding the risk that DACA recipients might not be financially responsible for property damage or personal injury caused by automobile accidents should the individuals become subject to immediate deportation and/or removal. SER 770-71.

An additional basis for the 2013 Policy revision was that ADOT learned that the agency had in the past processed some licenses for deferred action recipients. During his December 9, 2013 deposition, the Director stated that ADOT learned of this in 2012 (subsequent to the first policy change) through immigration experts quoted in several news articles, and, as a result, the Director directed ADOT to consider additional policy revisions to address any inconsistencies.

## III.    ADOT's 2013 Revision to Remedy Inconsistencies

To assess whether the 2012 Policy resulted in any inconsistencies, ADOT developed objective criteria to determine whether an applicant could satisfy the statutory requirement that the applicant submit "proof satisfactory" to ADOT "that the applicant's presence in the United States is authorized under federal law." If an applicant has status, a path to status, or has an EAD based on relief provided pursuant to the INA, the applicant is eligible for a driver's license. Applying that criteria, ADOT determined that DACA, regular deferred action, and deferred enforced departure have no basis in statute or regulation but rather reflect the

3

federal executive's discretionary decision not to enforce federal law. Thus, EAD holders with codes (c)(33), (a)(11) and (c)(14) do not have authorized presence under federal law.

## ARGUMENT

## I.    THE COURT SHOULD REMAND TO THE DISTRICT COURT.

### A.    The District Court Must First Consider the 2013 Policy.

Absent a finding of mootness,[2] this Court should remand the case to the district court for review of the 2013 Policy. In *Coral Construction Company v. King County*, 941 F.2d 910 (9th Cir. 1991), the county amended its contracting program after the district court ruled in the county's favor on plaintiffs' equal protection claim. *Id.* at 914-15. Rather than addressing the merits of the plaintiffs' claims under the amended policies, the Ninth Circuit left "the question of the amended program's constitutionality . . . to the district court for determination on remand." *Id.* at 928 (citation omitted); *see also Fusari v. Steinberg*, 419 U.S. 379,

---

[2] The equal protection claim is moot because the 2013 Policy includes the remainder of the class arguably similarly situated to DACA. Because ADOT reads the statute to require that ADOT not accept EADs with codes (a)(11) or (c)(14), just as it reads that statute to require that ADOT not accept EADs with code (c)(33), the revision is required by statute—enforcement of the 2012 Policy cannot reasonably be expected to recur. Plaintiffs cite *Reed v. Town of Gilbert*, 707 F.3d 1057 (9th Cir. 2013), arguing this issue is not mooted because the 2013 policy "suffers from the same constitutional infirmities" as the 2012 Policy. This is not the case, however, because the broadening of the Policy has rendered it "far less susceptible to attack on equal protection grounds." *See Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193-94 (3d Cir. 2001).

385-90 (1975) (post-injunction changes "may significantly alter the character of the system considered by the District Court" and "[w]e are unable to meaningfully assess the issues in this appeal on the present record."); *Reed v. Town of Gilbert*, 707 F.3d 1057, 1077 (9th Cir. 2013) (holding that a challenge to the amended code should initially be litigated in the district court). This Court should not consider the 2013 Policy given that the district court's order was based on the 2012 Policy.

**B.    Remand Is Necessary Because the Record is Devoid Of the Facts Necessary to Render An Analysis of the Equal Protection Claim.**

The equal protection claim is not properly before the Court because it was not raised in Plaintiffs' opening brief. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009). Further, remand is appropriate where the facts necessary to decide the question presented are not in the record. *See, e.g., Fusari*, 419 U.S. at 387; *Coral Const. Co.*, 941 F.2d at 921-22. Resolving Plaintiffs' equal protection claim on the merits requires the Court to address: (1) whether Plaintiffs are similarly situated; and (2) whether ADOT has a rational basis for any alleged disparate treatment caused by the 2013 Policy. *See, e.g., Christian Gospel Church, Inc. v. City & Cnty. of S.F.*, 896 F.2d 1221, 1225-26 (9th Cir. 1990), *superseded on other grounds by* 42 U.S.C. § 2000e.

Whether Plaintiffs are similarly situated is a mixed question of law and fact as evidenced by the parties' extensive reliance on experts to opine on the similarly situated analysis, all of whom submitted reports and declarations addressing the

2013 Policy and none of which is contained in this Court's record. Further, the facts supporting ADOT's rational bases for the 2013 Policy were explained by ADOT's Director in his December 2013 deposition, which also is not in the Court's record.[3] Because the 2013 Policy change occurred after the district court's opinion, the facts necessary to resolve these issues are not in the record.

The nature of fact-finding at a preliminary injunction hearing highlights that it is particularly inappropriate for this Court to consider the 2013 Policy based on the current record. *See, e.g., Univ. of Tex. v. Camenish*, 451 U.S. 390, 395-96 (1981) (noting that the district court's findings from "a preliminary injunction are not binding at trial on the merits[]" and that during a preliminary injunction hearing "the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy"). The Court's factual record is incomplete as it only reflects "four weeks of limited discovery" commenced nearly a year ago between January 15, 2013 and February 8, 2013. *See* ER 48-49.

The parties engaged in extensive discovery between June 21, 2013 and December 17, 2013. The record here is devoid of information elicited from: (1) written discovery requests; (2) subpoenas; (3) approximately 5,600 additional

---

[3] Plaintiffs argued the merits of their claims in the supplemental brief without attaching any new evidence, making unsupported evidentiary assertions. Defendants respond to the merits arguments by describing some evidence related to the 2013 Policy but do not waive the argument that this case must be remanded.

pages of documents; and (4) 14 depositions.  This evidence should be presented to the district court prior to a review of the 2013 Policy by this Court.

## II.  DEFENDANTS PREVAIL IF THIS COURT UNDERTAKES AN EQUAL PROTECTION ANALYSIS OF THE 2013 POLICY.

### A.    The 2013 Policy Cures Any Potential Equal Protection Issue.

Because the 2013 Policy broadens the restriction on license eligibility to deferred action recipients, it avoids any arguable equal protection deprivation that might have been effected by the 2012 Policy.  *See Heckler v. Matthews,* 465 U.S. 728, 738-40 (1984) ("[W]hen the right invoked is that of equal treatment, the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.") (citation and internal quotations marks omitted); *Palmer v. Thompson*, 403 U.S. 217, 218-26 (1971) ("Nothing in . . . the Fourteenth Amendment nor in any of our prior cases persuades us that the closing of the . . . swimming pools to all its citizens [rather than operating them on a de-segregated basis] constitutes a denial of 'the equal protection of the laws.'"); *Christian Gospel Church, Inc.*, 896 F.2d at 1225-26 (citing *Palmer*, holding that requiring use permits for churches complied with equal protection because the condition applied to other forms of public assembly).

Plaintiffs cite *Pacific Shores Properties, LLC v. City of Newport Beach*, where the plaintiffs submitted "a large amount of evidence" that the city's intent

underlying the ordinance was to target group homes for recovering substance abusers (plaintiffs' class), and the court concluded that the ordinance regulated other types of properties "primarily for the purpose of maintaining a veneer of neutrality." 730 F.3d 1142, 1147-56 (9th Cir. 2013).[4] Evidence of discriminatory intent is absent here. The purpose of the 2013 Policy is to comply with A.R.S. § 28-3153(D) rather than to discriminate against Plaintiffs. *See supra* p. 2-4. Indeed, although the district court preliminarily found that Defendants' motivations in enacting the 2012 Policy would likely fail rational basis review, it declined to ascribe any discriminatory intent to those actions. *See* ER 27-32 (concluding Defendants' actions failed rational basis inquiry without characterizing Defendants' intent as "discriminatory"); ER 30 n. 9. As a result, *Palmer* and *Heckler* control. Because the 2013 Policy no longer differentiates between DACA and deferred action, any equal protection issue has been cured.

### B.    Plaintiffs Cannot Satisfy The Similarly Situated Test.

Before the Court conducts an equal protection analysis, Plaintiffs must be similarly situated to other unauthorized immigrants who have obtained driver's

---

[4] The evidence of discriminatory intent was abundant: the mayor referred to group home residents as "alcoholics and drug addicts;" the objectives of the ordinance were to ban group homes, relieve an "existing overconcentration of group homes" and to reduce the "adverse impacts" of group homes; a city council member confronted by constituents explained that "unfortunately . . . our ideal [regulation of only group homes] must be tempered by [the] reality [of antidiscrimination law];" and in practice the facially neutral ordinance was enforced only against group homes. *Id.*

licenses by submitting EADs.  *See supra* p. 5.

Plaintiffs contend that all individuals with federally authorized presence are similarly situated.  This argument conflates "authorized presence under federal law" with the concept of "unlawful presence," which is a defined term under the INA that is only applicable in the context of calculating bars to future admissibility.  *See* 8 U.S.C. § 1182(a)(9)(B).  The non-accrual of "unlawful presence" does not equate to authorized presence under federal law.  For example, a minor who enters the country illegally has no authorization to be in the United States but does not accrue "unlawful presence" until he turns 18 years old.  *See* 8 U.S.C. § 1182(a)(9)(B)(iii)(I).  The same is true for deferred action recipients (*i.e.*, the beneficiaries of a discretionary decision by the federal executive not to enforce immigration law).[5]  Deferred action recipients are not accruing "unlawful presence" for purposes of calculating how many years they will be barred from reentry into the United States.  Such persons remain removable and do not have authorized presence under federal law.  *See* Answering Brief ("An. Br.") at 6-8, 43-48.

---

[5] ICE notes that deferred action "does not confer any immigration status upon an alien, nor is it in any way a reflection of an alien's immigration status[,]" "does not operate to cure any defect in status under . . . the [INA] . . . for any purpose" and is not "intended to provide for the foreign national's long-term presence . . . ."  *See* U.S. Immigration and Customs Enforcement, Tool Kit for Prosecutors (Apr. 2011), at 4-5, *available at* https://www.ice.gov/doclib/about/offices/osltc/pdf/tool-kit-for-prosecutors.pdf [hereinafter *ICE Tool Kit*].

Contrary to Plaintiffs' overbroad assertion, the district court did not hold that Plaintiffs were similarly situated to all individuals presenting EADs for licenses. The court held that Plaintiffs were similarly situated to deferred action recipients who had received licenses in the past and EAD holders with (c)(9) and (c)(10) codes who also received licenses. *See* ER 14-16. First, the appropriate inquiry is not whether a class is treated differently before and after the policy but rather whether similarly situated groups are treated the same under the policy going forward. *See, e.g., Chan v. Reno*, 113 F.3d 1068, 1074 (9th Cir. 1997) (rejecting equal protection challenge because applicant who entered the United States "without inspection" after enactment is not similarly situated to applicant who entered "without inspection" before the enactment and rejecting argument INS treated another alien more favorably because "[a]ny other conclusion would create an absurd result: whenever the INS granted an alien relief to which he was not entitled, any future attempts to apply the law correctly would generate an equal protection claim"). Notably, the 2013 Policy excludes as satisfactory proof of authorized presence all forms of deferred action. Despite the fact that some applicants with deferred action received driver's licenses before the policy change, the 2013 Policy treats all deferred action recipients the same.

Further, unlike deferred action recipients, EAD holders with all other codes either have lawful status, are on a path to lawful status, or have an EAD that is tied

10

to relief provided for under the INA.  EADs with code (c)(9) are provided to individuals seeking an adjustment of status pursuant to INA Section 245, which authorizes the adjustment of status to a person admitted for permanent residence and results in a green card.  8 C.F.R. § 274.a.12(c)(9).  EADs with code (c)(10) are related to suspension of deportation and cancellation of removal pursuant to INA Section 240A, which allows cancellation of removal and adjustment of status to a permanent resident and results in a green card.  8 C.F.R. § 274.a.12(c)(10).  As a result, Plaintiffs have failed to show that they are similarly situated to others who can obtain driver's licenses by submitting EADs.

### C.    ADOT's 2013 Policy Satisfies the Rational Basis Test.

#### 1.    Rational Basis Review Applies.

The district court applied heightened rational basis review ("HRBR"), despite the fact that it found HRBR "to be problematic" because it was "dangerously susceptible to invoking a judge's own policy preferences."  ER 27. The district court properly held that intermediate and strict scrutiny do not apply. *See* ER 16-23.

According to the district court, HRBR applies when "classifications arise[] from improper motives."  ER 27.  Plaintiffs argue such motives are evidenced by: (1) the Governor's public statements; and (2) Defendants' deliberations regarding the Governor's Executive Order.  This argument fails because there is no evidence

11

of improper motives, and HRBR is inappropriate under established standards of equal protection jurisprudence.[6]

First, not only are the Governor's statements taken out of context but those statements are irrelevant to ADOT's 2013 Policy. The Governor's opinions about President Obama's political motivations for the DACA Program do not add to or change the plainly-stated purpose of the Executive Order asking state agencies to review existing policies to ensure that individuals did not receive public benefits to which they were not entitled. Indeed, the Governor's Office's 30(b)(6) witness testified in December 2013 that because the statute vests authority in the Director, the Governor would have supported ADOT had it determined that DACA recipients were eligible for driver's licenses. The challenged action here is not the Executive Order, but rather ADOT's 2013 Policy.

The Governor's statement regarding the Executive Order is not evidence of a discriminatory motive. The Governor's statement was as follows:

> So actually it's no different than what already is in place, no driver's licenses to illegal people and no public benefits. But it was because of the order by the Obama Administration by President Obama to . . . proceed with this amnesty program . . . that started today. [T]here were questions about what the agencies were going to do, so we just

_____

[6]HRBR is not an appropriate level of scrutiny under equal protection. Even if HRBR exists, Defendants disagree with the district court's finding that "improper motives" justifies the application of it here. *See Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 1023, 1038 (E.D. Cal. 2007) ("[W]hether the 'higher-order rational basis review,' [used] . . . in *Romer* . . . and *City of Cleburne* . . . is broadly applicable in other contexts is far from clear.").

> made it perfectly clear so there would be no misunderstanding and . . .
> that's generally how a governor executive officer . . . handles . . .
> things in their state.

SER 985.  Viewed in context, which is what would happen during a full and fair hearing on the merits, the Governor's statement echoes the Executive Order's plain language and does not provide evidence of an improper motive behind ADOT's 2013 Policy.

Second, with respect to the options memorandum, it was used in connection with the development of the 2012 Policy, not the 2013 Policy. This memorandum focused on DACA recipients only because: (1) ADOT had *already* determined that they were not eligible; and (2) their eligibility for licenses was an issue that would arise immediately.  As reflected by the 2013 Policy, ADOT subsequently analyzed other issues related to authorized presence.

### 2. ADOT's 2012 Policy Was Rationally Related to Legitimate State Interests.

The bases for the 2012 Policy also support the 2013 Policy.  Although the district court tentatively rejected the rational bases on the limited record before it, the court's findings were preliminary, subject to review through a final trial of the merits. *See supra* p. 6.  Further, the district court erred in applying HRBR.  To satisfy traditional rational basis review, ADOT need only set forth "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (citations omitted).  ADOT's decision to

allow only applicants who have status, a path to status or an EAD based on relief provided for under the INA (thereby distinguishing between EAD holders with codes (c)(33), (c)(14) and (a)(11) and all other EADs) is rationally related to Arizona's strong state interests. *See supra* p. 1-3.

### 3.     ADOT's 2013 Policy Is Rationally Related to  Legitimate State Interests.

The 2013 Policy was implemented to ensure consistency in treatment of deferred action recipients.  The Arizona statute, which has not been challenged, vests authority in ADOT's Director to determine what proof is satisfactory in order for an applicant to obtain a driver's license.  *See* A.R.S. § 28-3153(D).  Once the Director became aware that DACA recipients did not have authorized presence under federal law, he revised the Policy in 2012 to ensure ADOT was complying with the statute.  Subsequent to the 2012 Policy, after the Director learned that the change resulted in inconsistent treatment, he revised the Policy in 2013 to ensure consistent application of ADOT's policies.

The Director developed objective criteria by which to determine whether an applicant could satisfy the statute.  To ensure consistent application of the statute, the Director determined that, if an applicant had status, a path to status or had an EAD based on relief provided for under the INA, then the applicant was eligible for a driver's license.   Applying this criteria, ADOT determined that DACA recipients ((c)(33)), recipients of regular deferred action ((c)(14)) and deferred

14

enforced departure ((a)(11)) have no basis in a statute or regulation but rather reflect the executive's discretionary decision not to enforce federal law. This decision is simply not irrational because it is meant to reduce the possibility of inconsistencies.

Plaintiffs' arguments for why ADOT's 2013 Policy is irrational fail. First, for both the (c)(9) and (c)(10) codes, the EAD holder is on a path to lawful status because the adjustment of status and cancellation of removal both result in the issuance of a green card. *See supra* p. 11.

Second, individuals accorded parole-in-place status are provided such relief pursuant to the INA (§ 212(d)(5)(A)).[7] Anyone afforded such status, and accordingly an ability to obtain a driver's license by holding an EAD with code (c)(11), is dissimilar from deferred action, DACA and deferred enforced departure, all of which are obtained as a result of the executive's decision not to enforce the INA. 8 C.F.R. § 274.a.12(c)(11).

Finally, persons who have filed Violence Against Women Act petitions may apply for three different types of EADs, including (c)(9), (c)(31) and (c)(14). 8 C.F.R. § 274.a.12(c)(9), (c)(31) & (c)(14).[8] Because ADOT accepts EADs with

---

[7] *See* USCIS Policy Memorandum Regarding Parole of Family Members of Active Duty Members of the Armed Forces (Nov. 15, 2013), *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2013/2013-1115_Parole_in_Place_Memo_.pdf.

[8] The availability of (c)(31) is referenced in USCIS guidance. *See* USCIS Policy

codes (c)(9) and (c)(31), due to the fact that they are evidence that the holder is on a path to status or has lawful status, abuse victims can receive driver's licenses.[9]

### D.    Plaintiffs Have Not Demonstrated Irreparable Harm.

Irreparable harm is not presumed from an equal protection violation.  *See* An. Br. at 24-27; *Vaqueria Tres Monjitas, Inc. v. Irizarry,* 587 F.3d 464, 484-85 (1st Cir. 2009).

Plaintiffs' alleged actual harms do not support a preliminary injunction because their testimony shows that each Plaintiff has not suffered harms related to employment, familial relations, or everyday activities.  *See* An. Br. at 27-31.[10]  All Plaintiffs are working, except for one who is principally a caregiver to her child.  *See* SER 904, SER 907 (Plaintiff A has held jobs and now is a caregiver); ER 621, (Plaintiff B works as a medical assistant); ER 633-34 (Plaintiff C owns a carpet cleaning business); ER 653 (Plaintiff D explaining his job); ER 673 (Plaintiff E

---

Memorandum Regarding VAWA Self-Petitioners (Aug. 30, 2011), *available at* http://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2011/August/VAWA-Elder-Abuse.pdf.

[9] U Visa holders assigned to a waiting list (because the annual statutory cap has been met) can seek parole.  Based on parole (rather than deferred action), the applicant can seek an EAD.  *See Questions & Answers: Victims of Criminal Activity,    U    Nonimmigrant    Status*,    USCIS.GOV, http://www.uscis.gov/humanitarian/victims-human-trafficking-other-crimes/victims-criminal-activity-u-nonimmigrant-status/questions-answers-victims-criminal-activity-u-nonimmigrant-status (last visited Jan. 6, 2014).

[10] Although one Plaintiff stopped driving when he received DACA status, that Plaintiff is being dismissed because his marriage to a U.S. citizen will result in him receiving a different EAD, allowing him to get a driver's license.

works at Valley Metro).[11]

## III.    PLAINTIFFS' PREEMPTION CLAIM FAILS.

Conflict preemption exists "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 132 S. Ct. 2492, 2501 (2012) (citation and quotation marks omitted).  There is no legal basis for Plaintiffs' argument that the 2013 Policy is conflict preempted because the allowance of EADs to some deferred action recipients entitles Plaintiffs to work in their ideal jobs.  Notably, the record reflects that the Policy has not precluded Plaintiffs from working.

The 2013 Policy does not contradict the federal definition of authorized presence because federal law neither defines authorized presence nor defines individuals with deferred action as having authorized presence.[12] *See* An. Br. at 43-48; *supra* p. 9.

Plaintiffs have not identified a purpose of Congress with which ADOT's

---

[11] Contrary to Plaintiffs' argument, operating a motor vehicle without a valid driver's license is a civil violation of A.R.S. § 28-3151.  *See* A.R.S. § 28-3471; *Brodsky v. State*, 189 P.3d 1081, 1084 (Ariz. App. 2008) (observing that under § 28-3471 provisions of A.R.S. Title 28, Chap. 8 are civil (not criminal) in nature).

[12] Plaintiffs' citation to BIA cases where deferred action was discussed in dicta adds nothing to their argument.  For example, *In Re Quintero*, 18 I. & N. Dec. 348 (BIA 1982), actually supports Defendants' position, noting deferred action "is bestowed as a matter of prosecutorial grace and accords no rights to permanent residence." *Id*. at 349.  In any event, any deference given to the BIA's interpretation should be limited to what deferred action means under the INA, not what it means for purposes of the 2013 Policy. *See* An. Br. at 43-44.

Policy conflicts.  ADOT has merely determined that three types of EADs are insufficient to establish that the EAD holders' presence is authorized under federal law for purposes of Arizona's driver's license statute.  There is no conflicting federal determination of eligibility to drive that preempts this Policy.

The REAL ID Act was aimed at creating minimum standards for identification used for federal purposes (*e.g.*, access to federal facilities) as a result of security concerns.  *See* Pub. L. No. 109-13, § 201, 119 Stat. 231, 312 (within Title II: "Improved Security for Drivers' Licenses").  It was not meant to ensure that unauthorized immigrants are able to drive legally.  Indeed, the fact that states can elect not to participate in the Act shows that Congress did not intend it to have preemptive effects.  *See* 6 C.F.R. § 37.1; *Saldana v. Lahm*, No. 4:13CV3108, 2013 WL 5658233 (D. Neb. Oct. 11, 2013) (rejecting DACA recipient's preemption argument under the REAL ID Act when the state denied her a driver's license).[13] Congress's recognition that the issuance of driver's licenses is a power left to the states indicates that it did not intend to preempt state decision-making in this area. *See Wyeth v. Levine*, 555 U.S. 555, 576 (2009) ("The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of

---

[13] Arizona, under Governor Napolitano, decided not to participate in the REAL ID Act. *See* A.R.S. § 28-336 (2008).  Further, although deferred action status may be evidence of "lawful status" under that the REAL ID Act, this definition does not apply in other contexts.  *See* 6 C.F.R. § 37.3 (noting that the definition of lawful status "does not affect other definitions or requirements that may be contained in the Immigration and Nationality Act or other laws").

18

state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.") (alteration in original) (citation omitted); *Rhodes v. Stewart*, 705 F.2d 159, 163 (6th Cir. 1983) ("Congress has not preempted an area wherein it has legislated when it expressly and concurrently authorizes the state . . . [to] opt-out of such federal legislative area. In such instance, rather than preempting the area, Congress expressly authorizes the states to 'preempt' the *federal* legislation.") (emphasis in original).

Plaintiffs further argue that ADOT's denial of driver's licenses undermines the goal of permitting certain deferred action recipients to work. Notably, however, working is not the goal of deferred action. Although the DACA memorandum "cannot preempt state law or policy" (ER 012), the program's purpose is to ensure that enforcement resources are not expended on low priority cases. *See* ER 203. The same is true for deferred action generally. *See ICE Tool Kit, supra* note 5, at 4 ("Deferred Action . . . is not a specific form of relief but rather a term used to describe the decision-making authority of ICE to allocate resources in the best possible manner to focus on high priority cases . . . .").

Further, since there is no fundamental right to a driver's license, a particular mode of transportation or even a right to a person's ideal job, the 2013 Policy does not conflict with any alleged Congressional goal to permit certain EAD holders to work. *See* An. Br. at 48-52; *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 n. 2

(9th Cir. 1985); *Raper v. Lucey*, 488 F.2d 748, 751 (1st Cir. 1973); *Harris v. Singh*, No. 12-476, 2012 WL 5467856, *4 (W.D. Pa. Oct. 23, 2012); *McGhee v. McCall*, No. 1:10-cv-333, 2010 WL 2163818, *2 (W.D. Mich. Apr. 19, 2010).

Finally, Plaintiffs' "constitutional" preemption argument indisputably has no basis in law.  *See* An. Br. at 52-57.

## IV.  PLAINTIFFS' REQUEST FOR AN INJUNCTION PENDING APPEAL SHOULD BE DENIED.

First, this Court cannot issue an injunction pending appeal before the district court has reviewed the 2013 Policy. *Cf. Purcell v. Gonzalez*, 549 U.S. 1 (2006) (issuance of injunction pending appeal was improper because Ninth Circuit owed deference to the district court's findings yet issued the injunction before the district court had issued its order relating to the challenged policy).[14]  Second, Plaintiffs have failed to comply with Fed. R. App. Proc. 8(a)(1) & (2) by neglecting to first move the district court for an injunction pending appeal or explaining why such a motion was impracticable.  Finally, the hardships do not favor Plaintiffs. *See* An. Br. 39-42; *Purcell*, 549 U.S. at 5 (district court's findings are owed deference upon a request for injunction pending appeal).

### CONCLUSION

Defendants respectfully request remand for a full trial on the merits.

---

[14] Although *Purcell* did not involve amendment to a challenged policy, the district court here has yet to review the 2013 Policy, and, much like *Purcell*, there are no findings as to the revised policy to review.  Thus, an injunction pending appeal would be premature.

RESPECTFULLY SUBMITTED:  January 7, 2014.

FENNEMORE CRAIG, P.C.


By *s/ Timothy Berg*
　　　Douglas C. Northup
　　　Timothy Berg
　　　Sean T. Hood
　　　Attorneys for Defendants-Appellees
　　　Governor Janice K. Brewer, John S.
　　　Halikowski and Stacey K. Stanton

　　　- and -

　　　Joseph Sciarrotta, Jr.
　　　Office of Governor Janice K. Brewer
　　　Co-Counsel for Defendant-Appellee
　　　Governor Janice K. Brewer

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Rule 32(a)(7)(c), Fed. R. App. P., and Circuit Rule 32-1, and this Court's December 12, 2013 Order, the foregoing Supplemental Brief is proportionately spaced, has a typeface of 14 points Times New Roman, and does not exceed 20 pages.

RESPECTFULLY SUBMITTED:  January 7, 2014.


*s/ Timothy Berg*
Attorney for Defendants-Appellees
Governor Janice K. Brewer, John S.
Halikowski and Stacey K. Stanton

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Supplemental Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 7, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Timothy Berg*
Attorney for Appellees
Governor Janice K. Brewer, John S.
Halikowski and Stacey K. Stanton

8764175

23